UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DAVID ANTHONY PEACE**,

              Plaintiff,

v.                                       **Case No. 15-cv-481-pp**

**WARDEN DONALD STRAHOTA,**
**WARDEN WILLIAM POLLARD,**
**TONY MELI,**
**SGT. TANNER,**
**SGT. LIND,**
**CAPTAIN OLSON,**
**TONIA MOON,**
**CO EAKE,**
**CO LEWIS,**
**WELCOME ROSE, and**
**CINDY O'DONNELL,**

              Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 9), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3), DENYING PLAINTIFF'S REQUEST FOR PETITION FOR A WRIT OF *HABEAS CORPUS AD TESTIFICANDUM* (DKT. NO. 5), DENYING PLAINTIFF'S MOTION *IN LIMINE* (DKT. NO. 13), AND SCREENING PLAINTIFF'S COMPLAINT**

---

      Daniel Anthony Peace, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while at Waupun Correctional Institution (Waupun). Dkt. No. 1. The case is before the court on the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 9), the plaintiff's motion to appoint counsel (Dkt. No. 3), the plaintiff's request for

1

petition for a writ of *habeas corpus ad testificandum* (Dkt. No. 5), the plaintiff's motion *in limine* (Dkt. No. 13), and for screening of the plaintiff's complaint.

I.  **MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time through deductions from his prisoner account. Id.

On May 21, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $9.62. Dkt. No. 11. The court entered an order on September 14, 2015, allowing the plaintiff to pay that initial partial filing fee out of his prison release account. Dkt. No. 15. The plaintiff paid the fee on September 21, 2015. Accordingly, the court will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee, and will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

II.  **SCREENING OF THE PLAINTIFF'S COMPLAINT**

   A.  Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

2

governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint, however, that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, the court must "identify[] pleadings that,

3

because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived the plaintiff of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. Facts Alleged in the Complaint

On November 24, 2014, a nurse in the Health Services Unit (HSU) at Waupun treated the plaintiff for the ongoing problem of the plaintiff's foot getting raw at work. Dkt. No. 1 at 8. The nurse prescribed "an ice bag 4 times a day as needed, hot water soaks in p.m.," and told the plaintiff to find out what works best to help his foot heal. Id. She completed a Restrictions/Special Needs form for the plaintiff and encouraged him to use his restrictions to find out what worked best to help his foot heal. Id., Exhibit 1.

4

On December 2, 2014, the plaintiff returned from either the shower or the library, and his cellmate told him the toilet did not work. Id. Defendant CO II Lewis was walking by the plaintiff's cell, so the plaintiff stopped him and asked him to fix the toilet. Id. Lewis said he would reset the toilet, but he did nothing for a half hour. Id.

The plaintiff called loudly out of his cell for a correctional officer. Id. Defendant CO I Eake appeared, and the plaintiff told her, "CO II Lewis did not fix my toilet, and I have to use[] the bathroom bad." Id. Before she fixed the toilet, Eake advised the plaintiff not to yell out of his cell. Id.

Later that night, at medication pass time, the plaintiff asked the correctional officer (either Standish or Eake) to let the sergeant know that the plaintiff needed his medical ice. Id. However, no one returned to the plaintiff's cell with ice or opened the plaintiff's cell door so he could get ice. Id.

On December 3, 2014, the plaintiff went to the ice machine around dinner time to get ice, with Sergeant Tanner's approval. Id. The plaintiff started to fill his ice bag, and then he heard Tanner say, "one scoop." Id. The plaintiff did not know that Tanner was talking to the plaintiff because Tanner did not address the plaintiff by name. Id. The plaintiff looked around to see who Tanner was talking to and then continued to fill his ice bag. Id. Tanner said, "are you a (f-ing) idiot or something, I said one scoop." Id.

At this point, Tanner had the plaintiff's full attention. Id. The plaintiff walked away from the ice machine and asked Tanner why he hadn't called the plaintiff out of his cell for his ice the night before. Id. Tanner said it was

5

because the plaintiff was yelling out of his cell. Id. The plaintiff said the only reason he was yelling out of his cell was to get his toilet fixed and that had nothing to do with his ice. Id. at 8-9. The plaintiff asked Tanner if he would call him out for his ice that night and Tanner said, "if I remember." Id. at 9. Tanner did not call the plaintiff out for his ice that night, and no one brought the plaintiff ice. Id.

On December 4, 2014, after dinner, the plaintiff went up to Tanner and asked him why he did not call the plaintiff out for ice. Id. Tanner said, "I didn't remember." Id. The plaintiff asked Tanner to please call him out tonight because the ice helps at nights. Id. Tanner told the plaintiff to tell the officer at med pass, but the plaintiff asked Tanner to please tell the officer, and he did. Id. The plaintiff got ice that night. Id.

On December 7, 2014, the plaintiff wrote to defendant Security Director Tony Meli about Tanner talking to the plaintiff in a disrespectful way. Id. The plaintiff already had written Tanner a request and given it to Eake, but Tanner did not respond. Id. The plaintiff asked Meli what he should do about this problem. Id. On December 8, 2015, Meli responded that the plaintiff should talk to Tanner. Id. The plaintiff wrote back to Meli on December 8: "I'm afraid if I talk to him, he will disrespect me again, and I could possibly go to segregation for the 3D's. I don't want to spend anymore time in your hole." Id. The plaintiff already had submitted an inmate complaint about Tanner disrespecting him on December 7. Id.

6

Case 2:15-cv-00481-PP   Filed 02/17/16   Page 6 of 17   Document 16

On December 14, 2014, CO I Standish came to the plaintiff's cell for medication pass. Id. The plaintiff asked him to let the sergeant know the plaintiff needed to come out of his cell for medical ice. Id. Defendant Sergeant Lind came to the plaintiff's cell shortly after medication pass and did not understand the plaintiff's restrictions sheet.[1] Id. The plaintiff explained it to her and Lind said, "I have been working here for years and I never allowed anyone to come out their cell to get ice." Id. at 9-10. The plaintiff believes that Lind said she would have to ask a tier tender, but the tier tenders were locked in their cells at 8:00 p.m. Id. at 10. The plaintiff told Lind that Tanner had told him to let the correctional officer know he needed his medical ice at medication pass time. Id. Lind still refused to let the plaintiff come out to get his medical ice. Id. When the plaintiff asked her how to spell her name, she left the plaintiff's cell. Id.

On December 25, Lind once again did not allow the plaintiff to receive his medical ice. Id.

On January 2, 2015, the plaintiff submitted an inmate complaint regarding Tanner disrespecting him. Id. The complaint was returned to the plaintiff, and he was instructed to talk to Captain Olson. Id.

On January 11, 2015, the plaintiff resubmitted his complaint regarding Lind not allowing the plaintiff to have his medical ice. Id. The plaintiff

---

[1] The plaintiff refers alternately to Sergeant Lien or Sergeant Lind, but seems to be referring to the same person. The court will refer to this defendant as Sergeant Lind for the purposes of this screening order.

contacted Captain Olson, and the complaint was returned to the plaintiff around December 29, 2014. Id.

Defendants Tonia Moon and Warden Pollard dismissed the plaintiff's inmate complaint regarding Tanner disrespecting him. Id. The plaintiff appealed, and defendants Welcome Rose and Cindy O'Donnell dismissed the appeal. Id. at 10-11.

Defendants Tonia Moon and Warden Pollard also dismissed the plaintiff's inmate complaint about Lind not allowing the plaintiff to receive his medical ice. Id. The plaintiff appealed, and defendants Welcome Rose and Cindy O'Donnell dismissed the appeal. Id. at 11.

The plaintiff asserts Eighth Amendment deliberate indifference claims and class-of-one Equal Protection claims. Id. at 15-16. He also alleges negligence, failure to intervene, retaliation, and claims against the defendants who handled his inmate complaints. Id. at 16-17. In addition to his general statements of legal theory, he references each defendant, the amount of compensatory damages he seeks, and his legal theory for that defendant. Id. at 12-13. The plaintiff seeks compensatory and punitive damages and injunctive relief. Id. at 12-14.

  C. <u>Legal Analysis of Alleged Facts</u>

First, the plaintiff proposes claims regarding Sergeants Tanner and Lind. He asserts that they knew about his medical restrictions but did not allow him to get the ice he needed.

8

In Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011), the United States Court of Appeals for the Seventh Circuit summarized the standard for Eighth Amendment medical care claims:

> The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose. Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. Accordingly, a claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.

(Quotations and citations omitted). At this stage, the plaintiff has stated Eighth Amendment claims against defendants Tanner and Lind, in claiming that they were deliberately indifferent to his need for ice, which had been prescribed by a medical professional.

Next, the plaintiff submits that defendants Eake, Lewis, Meli, and Olson failed to intervene to stop the deliberate indifference to his serious medical need. "An official satisfies the personal responsibility requirement of §1983 if he or she acts or *fails* to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." Fillmore v. Page, 358 F.3d 496, 506 (7th Cir. 2004) (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982). "An inmate's correspondence to a prison administrator may thus establish a basis of personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." Perez v. Fenoglio, 792

9

F.3d 768, 781-82 (7th Cir. 2015). The court concludes that the plaintiff has alleged sufficient facts to allow him to proceed on Eighth Amendment claims against defendants Eake, Lewis, Meli, and Olson, claiming that they knew of the failure to provide medical treatment, had the opportunity to intervene to stop the constitutional violation and failed to do so.

The plaintiff may not, however, proceed on any claims against Warden Donald Strahota. The plaintiff submits that Strahota is liable for all correctional staff actions and that it is his duty to make sure no one under his care is mistreated in any way. But government officials may not be held liable under §1983 for unconstitutional conduct of their subordinates. Iqbal, 556 U.S.at 676.

The plaintiff also alleges claims against defendants Moon, Pollard, Rose, and O'Donnell for their actions regarding his two inmate complaints. He says that each of these defendants dismissed his complaints either without a full investigation or without investigating the facts themselves.

"Prison officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). However, "[o]ne can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners." Id. For example, if "a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability." Id. (citations omitted) Additionally, "a complaint examiner

10

who intervened to prevent the medical unit from delivering needed care might be thought liable." Id. (citations omitted)

The court concludes that the plaintiff's allegations that these individuals involved in the complaint process failed to investigate the facts of his complaints before dismissing them or approving their dismissal are enough, at this stage, to state claims Eighth Amendment claims against defendants Moon, Pollard, Rose, and O'Donnell. The court notes, however, that the plaintiff may proceed only on his claim regarding how these defendants treated his complaint regarding medical ice; he may not proceed against them regarding treatment of his complaint that Tanner disrespected him.

To state a class-of-one equal protection claim, a plaintiff must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012). The plaintiff states that one of the sergeants involved did not let him out for his medical ice "due that the fact I called for a CO out my cell to fix my toilet." Dkt. No. 1 at 16. The plaintiff has not identified any other similarly situated prisoner who was treated differently and, even if he had, the plaintiff provided a rational basis (even if it was one he disagreed with) for why he was treated differently. The court will not allow the plaintiff to proceed on a class-of-one equal protection claim.

Nor has the plaintiff stated any retaliation claims against any of the defendants. The plaintiff says that all the defendants had a "retaliatory motive to cover up the mistreatment of an inmate by two different sergeants, in

11

regards to his medical restriction, for his serious medical need." Dkt. No. 1 at 17. To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted). The plaintiff does not identify any First Amendment protected activity, and therefore cannot state retaliation claims against the defendants.

Finally, the plaintiff mentions negligence. He states: "[o]ne of the SGT(s) involved did not intend to do me any harm as well as some of the other defendants, this SGT(s) failed to give me my medical restricted ice when this was addressed to other defendant(s), they failed to intervene on the petitioner behalf, an[d] take action." Dkt. No. 1 at 16. There are only two sergeants named in the complaint, and the plaintiff already has alleged deliberate indifference claims against them. It is not clear what additional claim the plaintiff is trying to allege against one of the two sergeants; although he mentions the word "negligence," he appears to be re-stating his Eighth Amendment failure to intervene claims. Nonetheless, because the plaintiff mentions sergeants, and because a state law negligence claim might be an alternative to an Eighth Amendment claim against one of them, at this early stage the court will exercise supplemental jurisdiction over state law negligence claims against Sergeants Tanner and Lind. See 28 U.S.C. § 1367.

12

## III. PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 3)

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

In his April 24, 2015, motion, the plaintiff did not include any information about his attempts to hire a lawyer on his own. Dkt. No. 3. On July 29, 2015, however, the court received a declaration in support of the plaintiff's motion to appoint counsel. Dkt. No. 12. In that declaration, the plaintiff documented his attempts to secure counsel on his own. The court concludes that this declaration satisfies the first Pruitt factor, leaving the court to decide whether, given the difficulty of the case, the plaintiff is competent to represent himself.

The plaintiff very clearly and competently presented his claims to the court. His claims are fact-based and relate to what he and the defendants said and did, not to a complex legal argument. At this stage, the court concludes that the plaintiff's case is not so complicated that the plaintiff can't adequately represent himself.  See Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655).

### IV. PLAINTIFF'S MOTION *IN LIMINE* (DKT. NO. 13)

On July 29, 2015, the plaintiff filed a motion *in limine*. Dkt. No. 13. He asks the court to suppress details regarding his criminal convictions, and information regarding a conduct report that is the subject of another pending lawsuit, because he believes this information will prejudice his case.

The plaintiff has filed this motion too soon; it is too early for the court to make decisions about what evidence it might or might not admit at any future trial. After the court enters this order, and after the defendants have been served with and responded to the complaint, the parties will embark on discovery, which means that each side will turn over to the other side any information relevant to the allegations in the complaint. After that, the parties may, if they wish, file motions for summary judgment, where the court will decide whether the evidence shows that there are any material facts in dispute. Only if the court denies summary judgment will the court schedule a trial, and only then will the court begin to determine what evidence may or may not be admissible at that trial. The court will deny this motion without prejudice; if

14

the court ends up setting the case for trial, the court will notify the parties of deadlines for filing motions *in limine*.

## V. PLAINTIFF'S REQUEST FOR A WRIT

On the same day he filed his original complaint, the plaintiff filed a motion asking this court to issue a writ of *habeas corpus ad testificandum,* requiring the warden of his correctional institution to bring the plaintiff (referring to himself as "petitioner," as if this case were a *habeas corpus* petition) before the court for a preliminary hearing. Dkt. No. 5. The court does not hold "preliminary hearings" in §1983 cases; accordingly, the court will deny the plaintiff's request to be produced to testify at one.

The document also demanded discovery, depositions, transcripts, and subpoenas for witnesses. Id. This order will require the defendants to answer. Once they do, the court will set up a schedule for discovery and motion practice. Accordingly, the court also will deny as premature that portion of the motion that demands discovery, depositions, transcripts and subpoenas.

## VI. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis.* Dkt. No. 9. The court **ORDERS** the Secretary of the Wisconsin Department of Corrections or his designee to collect from the plaintiff's prison trust account the $340.38 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the

15

account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee shall clearly identify payments by the case name and number assigned to this case.

The court **ALLOWS** the plaintiff to proceed on Eighth Amendment medical care claims against Tanner and Lind. The court also **ALLOWS** the plaintiff to proceed on Eighth Amendment failure to intervene claims against defendants Eake, Lewis, Meli, and Olson. The court further **ALLOWS** the plaintiff to proceed on claims against defendants Moon, Pollard, Rose, and O'Donnell that they did not properly investigate his inmate complaints regarding the failure to provide him with medical ice.

The **DISMISSES** as a defendant Warden Donald Strahota.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the following state defendants: Tanner, Lind, Eake, Lewis, Meli, Olson, Moon, Pollard, Rose, and O'Donnell.

The court also **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, the defendants who are served shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 3.

16

Case 2:15-cv-00481-PP   Filed 02/17/16   Page 16 of 17   Document 16

The court **DENIES** without prejudice the plaintiff's motion *in limine*. Dkt. No. 13.

The court **DENIES AS PREMATURE** the plaintiff's petition for a writ of *habeas corpus ad testificandum*. Dkt. No. 5.

The court will send a copy of this order to the warden of the Waupun Correctional Institution.

Dated in Milwaukee, Wisconsin this 17th day of February, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge